IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

LANCER INSURANCE COMPANY,

    Plaintiff,

v.                                                                 CASE NO.:

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, LANCER INSURANCE COMPANY (hereinafter "LANCER"), by and through undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure and 28 U.S.C. § 2201, hereby files this Complaint against Defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY (hereinafter "LIBERTY MUTUAL"), and states as follows:

## THE PARTIES

1. At all times material hereto, LANCER was and is a corporation engaged in the insurance business organized and existing under the laws of the State of Illinois, with its principal place of business located at 370 West Park Ave., PO Box 9004, Long Beach, New York 11561. LANCER is an interested party whose rights and other legal obligations may be declared pursuant to 28 U.S.C. § 2201.

2. On information and belief, LIBERTY MUTUAL, at all times material hereto, was and is a corporation engaged in the insurance business organized and existing under the laws of

the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, MA 02116.

**JURISDICTION AND VENUE**

3.  This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because all parties to this suit are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interests and costs.

4.  This is an action for equitable subrogation, declaratory relief brought pursuant to 28 U.S.C. §§ 2201-2202, and insurer bad faith.

5.  LANCER seeks a declaration related to LIBERTY MUTUAL's duty to provide primary insurance coverage and indemnify its insureds, REGAL LIMOUSINE SERVICE, LLC (hereinafter "REGAL"), MILOVAN JANKOVIC ("JANKOVIC"), ROSS H. PATRICH (hereinafter "PATRICH"), and RHP PROPERTIES, INC. (hereinafter "RHP") (collectively "INSUREDS"), as the primary insurer under the LIBERTY MUTUAL policy of insurance issued to RHP PROPERTIES, INC., POLICY NO.: AS2-641-445510-020 (the "LIBERTY POLICY").

6.  LANCER further seeks as damages reimbursement for all sums expended in the handling and settlement of the claims brought against INSUREDS by GENIA DEBARROS (hereinafter "MRS. DEBARROS"), LEONARD DEBARROS (hereinafter "MR. DEBARROS"), RYLAN HAND (hereinafter "HAND"), ADHEMA AUGUSTE (hereinafter "AUGUSTE"), and DE ANDRA MANGAROO (hereinafter "MANGAROO"), and bad faith damages stemming from LIBERTY MUTUAL's bad faith conduct.

7.  Venue is proper in the Southern District of Florida because the automobile accident giving rise to this cause of action took place in Broward County, within the Southern District of Florida.

## FACTUAL BACKGROUND

8. At all times material hereto, REGAL—owned and operated by JANKOVIC—was insured under a Business Auto Insurance Policy issued by LANCER, Policy No.: BA173946#3, with effective dates from July 12, 2021 through July 12, 2022 (hereinafter "LANCER POLICY"). [*See* LANCER Policy of Insurance, attached hereto as Exhibit "**A**"].

9. JANKOVIC, through REGAL, has had business dealings with PATRICH, the owner of RHP.

10. On or about December 8, 2020, PATRICH issued a Power of Attorney to JANKOVIC specifically for his 2015 Jeep Wrangler, VIN No.: 117438059 (hereinafter "JEEP"). [*See* 12/8/20 Executed Power of Attorney, attached hereto as Exhibit "**B**"].

11. Around that time, PATRICH had an implied and/or expressed agreement with JANKOVIC to store his JEEP with JANKOVIC.

12. The JEEP was stored with JANKOVIC for a period of time exceeding a year.

13. During that period, PATRICH had given JANKOVIC implied and/or expressed permission to store, maintain, and keep the JEEP operational.

14. At all times material hereto, PATRICH never provided JANKOVIC with any expressed or implied restrictions regarding the use, storage, or maintenance of the JEEP.

15. On or about July 24, 2021, IVAN BACIC (hereinafter "BACIC")—a driver employed with REGAL—was under his scope of employment with REGAL and drove a 2016 Chevrolet Suburban owned by REGAL to Fort Lauderdale Airport to pick-up three passengers: MR. DEBARROS, MRS. DEBARROS, and HAND. After BACIC collected all three passengers from the Fort Lauderdale Airport and began heading towards the freeway, the 2016 Chevrolet

Suburban encountered technical issues and became inoperable. BACIC then contacted JANKOVIC to report the vehicle malfunction.

16. In response, JANKOVIC drove the JEEP to the location of the inoperable 2016 Chevrolet Suburban, collected BACIC, MR. DEBARROS, MRS. DEBARROS, and HAND, and proceeded along Highway I-95 towards their intended destination.

17. During this trip, JANKOVIC became involved in a multi-vehicle collision in which the JEEP collided with two other automobiles operated by AUGUSTE and MANGAROO. This accident resulted in personal injuries and property damage (hereinafter "ACCIDENT"). [*See* 7/24/21 Florida Crash Report, attached hereto as Exhibit "**C**"].

18. Thereafter, LANCER received personal injury and/or property damage claims from MR. DEBARROS, MRS. DEBARROS, HAND, AUGUSTE, and MANGAROO, resulting in the opening of LANCER Claim Number 769575.

19. Upon its investigation, LANCER discovered that LIBERTY MUTUAL was the insurance carrier for RHP and provided insurance coverage to RHP and the JEEP. [*See* LIBERTY POLICY, attached hereto as Exhibit "**D**"]. The LIBERTY POLICY provided $1,000,000 in liability coverage and had effective dates of October 31, 2020 through October 31, 2021. [*See, id*.].

20. Once aware of the claims against JANKOVIC, LIBERTY MUTUAL opened Claim Number AB505-486862-01.

21. On September 2, 2021, LIBERTY MUTUAL issued a coverage denial letter to JANKOVIC, wherein it claimed that JANKOVIC did not have permission to use the JEEP from RHP or PATRICH while it was being stored with JANKOVIC. [*See* 9/02/21 LIBERTY MUTUAL Coverage Denial Letter, attached hereto as Exhibit "**E**"].

22. However, JANKOVIC reported to LANCER that he had permission to use the JEEP from PATRICH at and around the time of the ACCIDENT and was never restricted in his use or maintenance of the vehicle.

23. Given LIBERTY MUTUAL's coverage disclaimer, LANCER defended and indemnified JANKOVIC under a full and complete Reservation of Rights. [*See* LANCER 1/31/22 Reservation of Rights letter, attached hereto as Exhibit "**F**"].

24. On March 28, 2022, via letter, LANCER demanded that LIBERTY MUTUAL accept responsibility for the defense, indemnification, and primary insurance coverage. [*See* LANCER 3/28/22 Demand, attached hereto as Exhibit "**G**"].

25. In the March 28, 2022 demand, LANCER advised LIBERTY MUTUAL that it was investigating the matter pursuant to a full and complete reservation of rights under the policy issued to REGAL, provided the basis for why the LIBERTY POLICY provides primary coverage for the subject accident, and made demands that LIBERTY MUTUAL provide additional insured coverage to REGAL and JANKOVIC and satisfy its coverage obligations by (1) written acceptance of the demand; (2) reimbursement for any legal fees that LANCER would be forced to incur; and, (3) make good-faith efforts to settle any claims against REGAL and JANKOVIC within the liability limits of the LIBERTY POLICY. [*See, id.*].

26. The March 28, 2022 demand explicitly notified LIBERTY MUTUAL that LANCER "reserves the right to pursue recovery against LIBERTY MUTUAL of any and all payments LANCER incurs in order to indemnify and/or defend REGAL and/or JANKOVIC for this loss", and "will be pursued by LANCER under a theory of equitable subrogation." [*See, id.* (alterations added)].

27. On April 22, 2022, LIBERTY MUTUAL rejected LANCER's March 28, 2022 demand. [*See* LIBERTY MUTUAL 4/22/22 Rejection Letter, attached hereto as Exhibit "**H**"].

28. On May 3, 2022, LANCER made a second demand to LIBERTY MUTUAL for defense, indemnification, and primary insurance coverage. [*See* LANCER 5/3/22 Demand, attached hereto as Exhibit "**I**"]. LANCER explicitly notified LIBERTY MUTUAL in the May 3, 2022 letter that none of the costs and/or payments incurred by LANCER shall constitute a waiver of its equitable subrogation rights against LIBERTY MUTUAL. [*See, id*.].

29. On June 6, 2022, LANCER issued a third demand to LIBERTY MUTUAL, repeating the same demands for primary insurance coverage and reservation of rights to pursue LIBERTY MUTUAL for any and all payments that LANCER was forced to incur. [*See* LANCER 6/6/22 Demand, attached hereto as Exhibit "**J**"].

30. In the June 6, 2022 letter, LANCER notified LIBERTY MUTUAL about a time-limit demand LANCER received from MANGAROO on April 28, 2022, enclosed a copy of the time-limit demand, and informed that a settlement had been reached, enclosing a copy of the proposed settlement agreement for LIBERTY MUTUAL's review. [*See, id.*, at p. 2].

31. The attached proposed settlement agreement to LANCER's June 6, 2022 demand for primary insurance coverage specifically reserved LANCER's right to deny liability and seek reimbursement from LIBERTY MUTUAL. [*See, id*.]. The June 6, 2022 demand warned LIBERTY MUTUAL that LANCER was not acting as a volunteer in settling the matter on behalf of its insured, and further advised that should LIBERTY MUTUAL decline to accept its contractual obligations, LANCER would be "forced to pursue legal action against LIBERTY MUTUAL, including but not limited to claims for bad faith, breach of fiduciary duty, breach of contract, and equitable subrogation." [*See, id.*, at p. 2].

32. On June 5, 2023, LANCER made a final demand to LIBERTY MUTUAL for defense, indemnification, and primary insurance coverage. [*See* LANCER 6/5/23 Demand, attached hereto as Exhibit "**K**"]. In the June 5, 2023 demand, LANCER informed LIBERTY MUTUAL about the forced settlement of claims totaling approximately $290,011.59, and demanded reimbursement from LIBERTY MUTUAL within 30-days or legal action would be taken against LIBERTY MUTUAL. [*See, id.*].

33. LIBERTY MUTUAL did not accept LANCER's June 5, 2023 demand.

34. There is an ongoing dispute between the parties about their responsibilities under their insurance contracts, specifically regarding which policy provides primary insurance coverage for the claims presented by MR. DEBARROS, MRS. DEBARROS, HAND, AUGUSTE, and MANGAROO.

## **LIBERTY MUTUAL POLICY TERMS**

35. The LIBERTY POLICY was in full force and effect when the ACCIDENT occurred. The Business Auto Coverage Form of the policy provides as follows:

> **1. Who is An Insured**
>
> The following are "insureds":
> **a.** You for any covered "auto".
> **b.** *Anyone else while using with your permission a covered "auto"* you own, hire, or borrow except:
>    (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>    (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>    (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>    (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

7

      (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

  **c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

[*See* Exhibit "**D**", at Business Auto Coverage Form Section II – Covered Autos Liability Coverage].

36. The LIBERTY Policy identifies covered autos by Symbol 1 – "Specifically Described Autos," as follows:

  **1**   Any "Autos"   Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

[*See, id*., at Business Auto Coverage Form, Section I – Covered Autos, A. Description of Covered Auto Designation Symbols].

37. The Policy defines "**Auto**" as follows:

SECTION V – DEFINITIONS
* * *
B. "Auto" means:
1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
2. Any other land vehicle that is subject to a compulsory or financial responsibility or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
* * *

[*See, id*., at Business Auto Coverage Form, Section V – Definitions].

38. Regarding the losses that LIBERTY MUTUAL will pay, the policy states:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

A.    Coverage

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
> * * * *

[*See, id*., at Business Auto Coverage Form, Section II – Covered Autos Liability Coverage].

## LANCER POLICY TERMS

39. The LANCER Policy was in full force and effect when the ACCIDENT occurred.

40. The LANCER Policy identifies covered autos by Symbol 7 – "Specifically Described Autos," as follows:

| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |

[*See* Exhibit "**A**", at Business Auto Coverage Form, Section I – Covered Autos, A. Description of Covered Auto Designation Symbols].

41. Regarding Schedule of Covered Autos, the LANCER Policy lists the 2016 Chevrolet Suburban. [*See, id.*, at p. 3 of Business Auto Declarations].

42. Regarding the losses that LANCER will pay, the Policy states as follows:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

A.   Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

9

>We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

[*See, id.*, at Business Auto Coverage Form, Section II – Covered Autos Liability Coverage].

43. The Policy states that Section II will apply as follows:

>**2. Who is An Insured**
>
>The following are "insureds":
>**a.** You for any covered "auto".
>**b.** Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:
>   **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". **This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.**
>   **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>   **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>   **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
>   **(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.
>**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

[*See id.*].

44. The Policy defines "**Auto**" as follows:

>SECTION V – DEFINITIONS
>\* \* \*
>   B. "Auto" means:

> 1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
> 2. Any other land vehicle that is subject to a compulsory or financial responsibility or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
> * * *

[*See, id*., at Business Auto Coverage Form, Section V – Definitions].

45. Regarding non-owned or "Temporary Substitute Auto," the LANCER Policy states:

> **C.   Certain Trailers, Mobile Equipment And Temporary Substitute Autos**
>
> If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:
> * * *
> 3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
>
>    a.   Breakdown;
>    b.   Repair;
>    c.   Servicing;
>    d.   "Loss"; or
>    e.   Destruction.

[*See, id*., at Business Auto Coverage Form, Section I – Covered Autos].

46. The LANCER Policy contains "Other Insurance" language listed as follows:

> **5. Other Insurance**
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

[*See Id.*, at SECTION IV – BUSINESS AUTO CONDITIONS].

11

## COUNT I – DECLARATORY JUDGMENT

47. LANCER realleges and incorporates by reference the averments in paragraphs one (1) through forty-six (46) as if fully set forth herein.

48. At the time of the loss, RHP and/or its owner PATRICH had his JEEP stored with JANKOVIC, and at no time prior to the loss restricted JANKOVIC's use of the JEEP.

49. At the time of the loss, LIBERTY POLICY provided coverage to INSUREDS.

50. The LIBERTY POLICY provided coverage to RHP as the Named Insured listed on the LIBERTY POLICY.

51. The LIBERTY POLICY provided coverage for all vehicles owned by PATRICH, including those vehicles acquired after the policy began [*See, Supra* ¶ 32], and covered PATRICH and anyone else using a covered auto with a named insured's permission. [*See, Supra* ¶ 31].

52. Based on the facts and circumstances surrounding the ACCIDENT, and the terms of the LIBERTY POLICY, JANKOVIC is an "Insured" as defined by the terms of the LIBERTY POLICY because JANKOVIC was operating the JEEP, a covered auto, with the implied or express permission of the named insured, RHP and/or PATRICH. [*See* Exhibit "**D**", at Business Auto Coverage Form Section II – Covered Autos Liability Coverage].

53. REGAL is likewise an insured under the terms of the LIBERTY POLICY because REGAL's liability arises from the conduct of JANKOVIC, who is an "insured," with respect to the subject motor vehicle accident. [*See* Exhibit "**D**", at Business Auto Coverage Form Section II – Covered Autos Liability Coverage].

54. As the primary insurer for INSUREDS, LIBERTY MUTUAL had a duty and obligation to defend and indemnify its INSUREDS from all the claims stemming from the ACCIDENT.

55. The LANCER POLICY is non-contributory and/or excess of the LIBERTY POLICY under the facts and circumstances of this ACCIDENT.

56. LANCER timely notified LIBERTY MUTUAL on three (3) separate occasions of the claims against REGAL and/or JANKOVIC and demanded that LIBERTY MUTUAL provide defense, indemnification, and primary insurance coverage. LIBERTY MUTUAL refused those requests and LANCER paid certain sums to resolve the matter in light of LIBERTY MUTUAL's refusal to do so. The sums paid and expenses incurred by LANCER were the sole obligation and responsibility of LIBERTY MUTUAL under its policy of insurance.

57. To date, LANCER has not received a written acceptance of its demands for LIBERTY MUTUAL to provide primary insurance coverage to REGAL and JANKOVIC.

58. LIBERTY MUTUAL refused to honor its policy obligations and indemnify LANCER for payment of the amounts required to resolve the claims against REGAL and JANKOVIC.

59. An actual controversy has arisen and exists between all parties to this lawsuit relating to their respective legal rights and duties under the LIBERTY POLICY and the LANCER POLICY.

60. Accordingly, LANCER is in doubt as to its rights, duties, and obligations under LANCER's and LIBERTY MUTUAL's respective policies; and, LANCER is in need of an immediate declaration of its rights, duties, and obligations under the aforementioned policies of insurance in relation to the loss fully described herein.

**WHEREFORE,** Plaintiff, LANCER INSURANCE COMPANY, respectfully requests that:

A. This Court take jurisdiction of the cause;

B.  This Court order, adjudge and decree that this is a proper cause of action for declaratory judgment and that there is a bona-fide controversy between the parties as to their legal rights, duties, status and liability;

C.  This Court find that liability coverage exists under the LIBERTY POLICY for the claims made against JANKOVIC and REGAL arising out of the July 24, 2021 accident;

D.  This Court find that primary insurance coverage is afforded under the LIBERTY POLICY for the accident that occurred on or about July 24, 2021, and more fully described above;

E.  This Court find that excess insurance above the LIBERTY POLICY is afforded by the LANCER POLICY;

F.  This Court award LANCER its costs incurred in this action; and

G.  This Court grant any such further relief that the Court deems just and proper.

### COUNT II – EQUITABLE SUBROGATION AS TO LANCER'S DEFENSE AND INDEMNITY PAYMENTS FOR REGAL AND JANKOVIC

61.  LANCER realleges and incorporates by reference the averments in paragraphs one (1) through sixty (60) as if fully set forth herein.

62.  LANCER brings this action for equitable subrogation against LIBERTY MUTUAL, for full recovery of all costs and indemnity payments in connection with the claims presented by MS. DEBARROS, MR. DEBARROS, HAND, AUGUSTE, and MANGAROO against REGAL and JANKOVIC.

63.  LANCER incurred costs and indemnity payments made on behalf of INSUREDS that were properly the primary responsibility and obligation of LIBERTY MUTUAL.

64.  LANCER did not act as a volunteer in incurring the costs and indemnity payments on behalf of INSUREDS because LIBERTY MUTUAL is the primary liability insurer of INSUREDS under its policy terms and conditions.

65. LANCER was not primarily liable for the resolution reached on behalf of REGAL and JANKOVIC because LIBERTY MUTUAL was at all times material considered the primary insurer as a matter of law, as further explained herein.

66. After LIBERY MUTUAL refused to protect and indemnify REGAL and JANKOVIC, LANCER reached a settlement of the claims presented by MS. DEBARROS, MR. DEBARROS, HAND, AUGUSTE, and MANGAROO against REGAL and JANKOVIC.

67. LANCER specifically and explicitly reserved its right to deny liability and seek reimbursement from LIBERTY MUTUAL under the terms and conditions of the settlement agreements entered into with MS. DEBARROS, MR. DEBARROS, HAND, AUGUSTE, and MANGAROO in order to resolve the claims against REGAL and JANKOVIC.

68. LANCER is the equitable subrogee of INSUREDS, and is entitled to reimbursement for all costs and indemnity payments made in defense and resolution of all claims brought against INSUREDS.

**WHEREFORE**, LANCER INSURANCE COMPANY respectfully requests that this Honorable Court enter judgment against LIBERTY MUTUAL for all sums paid and incurred by LANCER in defense and resolution of all claims brought against INSUREDS, together with interest from the date of each payment, and for its costs and attorneys' fees in bringing this action, and for such further relief as the Court deems just and proper.

## COUNT III – COMMON LAW BAD FAITH

69. LANCER realleges and incorporates by reference the averments in paragraphs one (1) through sixty-eight (68) as if fully set forth herein.

70. This is an action for common law bad faith against LIBERTY MUTUAL.

71. Pursuant to the terms and conditions of the LIBERTY POLICY and the LANCER POLICY, LIBERTY POLICY provides primary insurance coverage for the subject July 24, 2021, loss whereas LANCER POLICY provides excess coverage.

72. LIBERTY MUTUAL, as the primary carrier, owes a duty of good faith to LANCER, as the excess carrier – the same good faith duty that LIBERTY MUTUAL owes its INSUREDS.

73. LIBERTY MUTUAL was duly placed on notice of the subject loss, and LIBERTY MUTUAL opened a claim for the matter, Claim Number AB505-486862-01.

74. LIBERTY MUTUAL had a duty to use the same degree of care and diligence in the investigation and resolution of the claims presented against its INSUREDS as a person of ordinary care and prudence would exercise in the management of their business.

75. LIBERTY MUTUAL had a duty to defend the claims presented against its INSUREDS in relation to the subject loss.

76. LIBERTY MUTUAL breached its fiduciary duties to its INSUREDS and to LANCER by entirely failing to indemnify, defend, or otherwise provide coverage in relation to the subject loss.

77. LIBERTY MUTUAL breached its good faith duties by wrongfully disclaiming coverage for the subject loss and disclaiming its role as the primary insurer under the terms and conditions of its policy.

78. LIBERTY MUTUAL failed to settle the claims presented against its INSUREDS when it could and should have done so, had it acted fairly and honestly toward its INSUREDS and LANCER, and with due regard for their interests.

79. As a direct and proximate result of LIBERTY MUTUAL's breach of its good faith duties, LANCER suffered damages, including, but not limited to, the costs associated with investigating, defending, and indemnifying the claims arising out of the subject loss.

80. LANCER is equitably subrogated to all rights its INSUREDS have with respect to LIBERTY MUTUAL's bad faith conduct.

81. Based upon LIBERTY MUTUAL's actions, as described in this Complaint, LANCER was required to retain the services of the undersigned law firm and LANCER is obligated to pay a reasonable fee for the services performed.

**WHEREFORE**, LANCER demands judgment against LIBERTY MUTUAL for all damages, interest, attorney's fees and costs, as authorized under applicable law, and any further relief this Court deems just and proper.

### COUNT IV – STATUTORY BAD FAITH PURSUANT TO FLA. STAT. §§ 624.155

82. LANCER realleges and incorporates by reference the averments in paragraphs one (1) through eighty-one (81) as if fully set forth herein.

83. This is an action for bad faith against LIBERTY MUTUAL pursuant to Fla. Stat. § 624.155.

84. LIBERTY MUTUAL was duly placed on notice of the subject loss, and LIBERTY MUTUAL opened a claim for the matter, Claim Number AB505-486862-01.

85. LIBERTY MUTUAL owed duties to its insureds and LANCER, as provided in Fla. Stat. § 624.155 and the applicable Florida law.

86. LIBERTY MUTUAL breached the duties it owed its insureds and to LANCER by entirely failing to indemnify, defend, or otherwise provide primary coverage for the July 24, 2021 accident.

87. LIBERTY MUTUAL breached its good faith duties by wrongfully disclaiming coverage for the subject loss and disclaiming its role as the primary insurer under the terms and conditions of its policy.

88. Further, LIBERTY MUTUAL breached its good faith duties by failing to settle the claims arising out of the July 24, 2021 accident when under all the circumstances it could and should have settled, had it acted fairly and honestly toward its INSUREDS in violation of Fla. Stat. § 624.155(1)(b)(1).

89. As a direct and proximate result of LIBERTY MUTUAL's violation of Fla. Stat. § 624.155, as described herein, LANCER suffered and continues to suffer damages, including, but not limited to, the costs associated with defending and indemnifying the claims arising out of the subject loss.

90. On October 23, 2023, LANCER provided LIBERTY MUTUAL with statutory notice of insurer violations, allowing LIBERTY MUTUAL to cure the violations discussed herein. [*See* Civil Remedy Notice of Insurer Violations, attached as Exhibit "L"].

91. LIBERTY MUTUAL failed to cure its violations within 60 days of the statutory notice.

92. Based upon LIBERTY MUTUAL's actions, as described in this Complaint, LANCER was required to retain the services of the undersigned law firm and is obligated to pay its attorneys a reasonable fee for the services performed.

93. LANCER complied with all conditions precedent to bringing the instant action against LIBERTY MUTUAL.

**WHEREFORE**, LANCER demands judgment against LIBERTY MUTUAL for all damages, interest, attorney's fees and costs, as authorized under applicable law, and any further relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL

LANCER demands a trial by jury of all issues so triable.

Respectfully submitted this 2nd day of February 2024.

        **s/RICHARD A. WELDY**
        **ADAM A. DUKE**
        Florida Bar No.: 0055734
        aduke@flalawyer.net
        **RICHARD A. WELDY**
        Florida Bar No.: 111811
        rweldy@flalawyer.net
        **SEAN M. FARD**
        Florida Bar No.: 1017980
        sfard@flalawyer.net
        Young, Bill, Boles, Palmer,
        Duke & Thompson, P.A.
        One Biscayne Tower,
        2 South Biscayne Boulevard
        Suite 3195
        Miami, Florida 33131
        Telephone: (305) 222-7720
        Facsimile: (305) 492-7729
        Attorneys for *LANCER*